*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-1007

SHURON I. TURNER, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

Petition for Review of a Decision of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-052-17)

(Submitted June 8, 2018                              Decided June 20, 2019)

*David J. Kapson* and *Kevin H. Stillman* were on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Acting Solicitor General at the time the statement was filed, and *Stacy L. Anderson*, Acting Deputy Solicitor General, were on the statement in lieu of brief for respondent.

*Sarah O. Rollman* and *Mark H. Dho* were on the brief for intervenor.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN and MCLEESE, *Associate Judges*.

Opinion for the court by *Chief Judge* BLACKBURNE-RIGSBY.

Dissenting opinion by *Associate Judge* MCLEESE at page 15.

BLACKBURNE-RIGSBY, *Chief Judge*: Claimant-petitioner Shuron Turner injured her right wrist and arm while working as a bus driver for employer-intervenor Washington Metropolitan Area Transit Authority ("WMATA"). Ms. Turner requested, and ultimately was awarded, benefits for a thirteen-percent permanent partial disability to her upper right extremity under the District of Columbia Workers' Compensation Act ("Act"). D.C. Code §§ 32-1501 to -1545 (2012 Repl.). Afterwards, Ms. Turner sought reimbursement of attorney's fees in connection with her disability claim. *See* D.C. Code § 32-1530. Before this court is Ms. Turner's petition for review of the Compensation Review Board's ("CRB") order affirming the Administrative Law Judge's ("ALJ") decision to deny Ms. Turner's request for attorney's fees. We affirm.

## I.

Under the Workers' Compensation Act, a claimant may recover attorney's fees from the employer "in only two situations." *Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1111 (D.C. 2004). In the first situation, a claimant is entitled to recover attorney's fees "if the employer refuses to pay *any compensation* for a work-related injury within thirty days of receiving

written notice from the Mayor of a claim for compensation, and the claimant consequently uses the services of an attorney to prosecute successfully his or her claim." *Id.* (emphasis added) (citations and internal quotation marks omitted); *see also* D.C. Code § 32-1530(a). In the second situation, recovery of attorney's fees is permitted "if an employer voluntarily pays or tenders compensation without an award but *later refuses to pay the additional compensation* claimed by the claimant within fourteen days of receiving a recommendation by the Mayor that the claim is justified, and the claimant uses the services of an attorney to recover the full amount claimed." *Providence Hosp.*, 855 A.2d at 1112 (emphasis added) (citation and internal quotation marks omitted); *see also* D.C. Code § 32-1530(b).

Here, the record reflects the following: after Ms. Turner injured her right wrist and arm from prolonged driving of a bus in February 2012, she sought treatment and missed about three weeks of work. WMATA states, and Ms. Turner does not appear to contest, that WMATA paid Ms. Turner temporary total disability benefits from February 26, 2012, to December 12, 2012, and paid for her medical care. Ultimately, Ms. Turner returned to work, received vocational training, and was promoted to a station manager in January 2015. In June 2015, Ms. Turner filed a claim for benefits for a thirteen-percent permanent partial disability to her upper right extremity. A claims examiner with the Office of

Workers' Compensation ("OWC") held an informal conference and issued a Memorandum of Informal Conference on July 13, 2015, recommending a seven percent permanent partial disability award. WMATA received the memorandum on July 16, and notified OWC within fourteen days that it was accepting OWC's recommendation, on July 31. Ms. Turner, on the other hand, informed OWC that it was rejecting OWC's recommendation and sought formal review.[1] Following a formal hearing, the ALJ agreed with Ms. Turner and awarded her a thirteen-percent permanent partial disability to the upper right extremity, which the CRB affirmed.

Ms. Turner thereafter filed a petition for attorney's fees with the ALJ, pursuant to D.C. Code § 32-1530. The ALJ denied Ms. Turner's petition for attorney's fees, and the CRB affirmed. The CRB rejected Ms. Turner's claim for attorney's fees on the basis that she did not meet the requirements of

---

[1] It appears from an attached August 2015 email chain that Ms. Turner was at first going to accept OWC's recommendation. In fact, Ms. Turner's counsel also asked WMATA to "hold off" issuing the check "until the recommendation is converted to a final order." However, Ms. Turner ultimately rejected the recommendation after counsel for WMATA responded by informing her that WMATA was going to seek a "credit" for advanced payment of compensation. Specifically, WMATA believed that it was entitled to a credit in the amount of $14,303.34, because it paid Ms. Turner that amount for an unrelated award of sixteen-percent permanent partial disability of the left leg that the CRB had subsequently vacated. The ALJ and the CRB later rejected WMATA's claim to a "credit."

§ 32-1530(b) because she rejected the OWC recommendation after WMATA had accepted the recommendation. The CRB cited to *Providence Hospital*, for the proposition that the claimant is not entitled to attorney's fees where the employer did not reject the recommendation. 855 A.2d at 1114. The CRB further observed that WMATA's "mere mention of a credit it thought it was owed does not equate to" a rejection by WMATA of OWC's recommendation." This petition for review followed.

## II.

Ms. Turner argues here that, although WMATA notified OWC that it was accepting OWC's recommendation on July 31, a subsequent email chain between WMATA and Ms. Turner in August 2015, where WMATA notified Ms. Turner that it would seek a "credit" for other payments that it had made to Ms. Turner constituted a de facto rejection of the informal recommendation by WMATA. Specifically, in connection with another workers' compensation case involving Ms. Turner, WMATA paid an award that was subsequently vacated by the CRB. Ms. Turner claims that WMATA did not act in "accordance with th[e] recommendation" by referencing the credit and not paying. *Providence Hosp.*, 855 A.2d at 1113.

This court's review of the CRB's decision is limited to determining whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (citation and internal quotation marks omitted). We will affirm the CRB (and the ALJ) if "(1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Id.* (citation and internal quotation marks omitted).

As stated earlier, attorney's fees are warranted under § 32-1530, in only two limited situations. Under § 32-1530(a), a claimant is entitled to attorney's fees if the employer refuses to pay *any* compensation after a claim has been filed, and the employee, through counsel, is ultimately successful in his/her claim for workers' compensation. Subsection (a) does not apply because WMATA paid Ms. Turner temporary total benefits and her medical expenses when she initially filed her claim for workers' compensation. WMATA also did not dispute that Ms. Turner suffered a work-related injury to her right wrist and arm. *See Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012) (Under subsection (a), "a claimant may recover attorney's fees if the employer disputes liability for the disability . . . ."). Consequently, Ms. Turner's reliance on

subsection (a) is inapposite. Ms. Turner argues that WMATA did not actually pay her pursuant to the OWC's recommendation of a seven-percent permanent partial disability award, and that this fact allows her to recover under subsection (a). However, Ms. Turner appears to ignore that WMATA did not contest that Ms. Turner suffered a work-related injury and paid temporary total disability benefits and her medical expenses. Because WMATA did not initially "decline[] to pay any compensation . . . [after] a claim for compensation ha[d] been filed," subsection (a) does not apply.

Further, Ms. Turner has failed to meet the requirements of subsection (b) to recover attorney's fees. Under subsection (b), "a claimant may recover attorney's fees if the employer tenders compensation initially without an award, but later refuses to pay additional compensation recommended by the agency after an informal conference, and the claimant uses an attorney to recover a greater amount via an award of compensation." *Fluellyn*, 54 A.3d at 1160. In interpreting § 32-1530(b), we have said that we adhere to the plain language of the statute and will allow recovery "only when the express conditions of the statute are met, including the employer's rejection of the Mayor's written recommendation in the case." *Providence Hosp.*, 855 A.2d at 1114. Here, it is undisputed that WMATA notified OWC that it was accepting its recommendation, while Ms. Turner notified OWC

that it was rejecting its recommendation. Accordingly, Ms. Turner failed to satisfy the "express condition" of subsection (b) that the employer must "refuse to accept [the Mayor's] written recommendation[.]" D.C. Code § 32-1530(b). In *Providence Hospital*, we held that:

> 32-1530 (b) requires that an employer/insurer reject the Mayor's recommendation before attorney's fees may be awarded to the claimant. *Because it was the claimant in this case*, and not the employer, who rejected the Mayor's recommendation, the DOES decision to affirm an award of attorney's fees was plainly erroneous and inconsistent with the statute and with our prior case law.

855 A.2d at 1110 (emphasis added). *Providence Hospital* clarifies that the "plain language of the statute clearly mandates that an employer's rejection of the Mayor's written recommendation is a prerequisite to the claimant recovering attorney's fees." *Id.* at 1113. Consequently, "[i]f the employer agrees with the Mayor's recommendation and acts in accordance with that recommendation, the claimant is barred from recovering attorney's fees." *Id.*

While subsection (b)[2] does appear to envision a scenario where an employee who "refuses to accept" what the employer tenders may be awarded attorney's

---

[2] The relevant portion of subsection (b) states:

> If the employer or carrier refuse to accept such written recommendation, within 14 days after its receipt by them,

(continued…)

fees, this scenario is limited to where the employer both refuses to accept the Mayor's recommendation in full and tenders less than what the Mayor recommended or nothing at all. Consequently, by negative implication, and under the canon of *expressio unius est exclusio alterius*, where (as here) the employer did accept the recommendation in full and (as the record reflects) intended to tender the full amount recommended by the Mayor, the employee who rejects that tender is not entitled to attorney's fees by statute.[3] "In all other cases any claim for legal services shall not be assessed against the employer or carrier." *See* D.C. Code

---

(…continued)

> they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation and thereafter utilizes the services of an attorney-at-law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation.

[3] The dissent argues that, per § 32-1530 (b), an employer who believes that an informal recommendation is excessive or unwarranted can choose to make lesser payments or none at all. *Post* at 25. But if the employer chooses to make a lesser payment or none at all, then the employer would be deemed to have rejected the informal recommendation, thereby opening itself up to a claim for attorney's fees. *See* § 32-1530 (b) ("If the employer or carrier refuse to accept such written recommendation, within 14 days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled.").

§ 32-1530(b); *see generally District of Columbia v. Reid*, 104 A.3d 859, 867 (D.C. 2014).

We agree with the CRB that the fact that WMATA merely advised Ms. Turner, informally, and by email, that it "may" seek a "credit" for payments already tendered to Ms. Turner in a different case, without more, is insufficient to demonstrate that WMATA was rejecting OWC's recommendation, or that it was acting not "in accordance with [OWC's] recommendation." *Providence Hosp.*, 855 A.2d at 1113. Our dissenting colleague argues that WMATA did not act "in accordance" with OWC's recommendation to pay Ms. Turner because WMATA did not actually make any payments in accordance with the recommendation. *Post* at 18-19. However, WMATA cannot be faulted for failing to pay under the recommendation because, once Ms. Turner rejected the recommendation and filed a hearing petition, the recommendation no longer became binding. WMATA therefore lacked the opportunity to get the benefit of the settlement bargain by paying in accordance with the recommendation. We have previously said that OWC's recommendation only "becomes binding if the recommendation is not timely rejected within fourteen days and an application for a formal hearing is not filed within thirty-four days after issuance of the recommendation." *Travelers Indem. Co. of Ill. v. District of Columbia Dep't of Emp't Servs.*, 975 A.2d 823, 826

(D.C. 2009). This is because the informal recommendation is "in effect, a recommendation for settlement — which the parties can either accept or reject," and thus the recommendation "acquires the force of law only if it is 'accepted by the parties.'" *Id.* at 829. Moreover, rejection of the recommendation by one party divests OWC "of jurisdiction to further consider the matter." *Fluellyn*, 54 A.3d at 1164; *see also* 7 DCMR § 219.23 ("All informal procedures shall terminate when an application for formal hearing is filed."). To assess attorney's fees on the employer when it was the employee who rejected the recommendation would be equivalent to incongruously treating the employer as bound by a settlement that the employee rejected. A settlement is supposed to settle the dispute.

Moreover, we have said that "when claimants decline to use th[e] informal procedure in favor of the formal claims procedure, they do so at the risk of increased expense to themselves and to the system." *Nat'l Geographic Soc. v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 618, 622 (D.C. 1998).[4] Our colleague's interpretation is contrary to this basic principle.

---

[4] Our dissenting colleague's attempt to distinguish *National Geographic Society* on factual grounds is inapposite. *Post* at 26. Our decision in *National Geographic* is clearly applicable here because Ms. Turner seeks attorney's fees, despite the fact that it was she who declined the informal procedure in favor of the formal claims process. Ms. Turner therefore bears the risk of choosing this more expensive route, and it would be contrary to the Workers' Compensation Act and

(continued…)

The situation might potentially have been different had WMATA informed OWC that it would be formally seeking a credit. In such an instance, we can envision this action as constituting a de facto rejection of the recommendation. However, that is not what occurred here, and we cannot say that WMATA could fairly be characterized as having rejected the recommended award or failed to act in accordance with the award simply by informally emailing Ms. Turner of the possibility that it would seek a credit.

We further reject the dissent's claim that § 32-1530(b) does not, by its terms, "tie the availability of a fee award to the claimant's decision to accept or contest the recommended award." *Post* at 23. This argument has essentially already been rejected in *Providence Hospital*. We agreed with the employer in *Providence Hospital* that attorney's fees should not have been awarded to claimant because "[t]he statute is specific in setting forth the requisite conditions for a claimant to recover attorney's fees, and leaves no discretion to the agency or court to decide cases in which all the conditions are not met." 855 A.2d at 1114. Consequently, by the plain language of the fee award statute that expressly excludes "all other cases" than those that meet the criterion of either subsection (a) or (b), Ms.

(…continued)
the intent of § 32-1530 (b) for her to seek reimbursement of her attorney's fees from WMATA, when WMATA never sought to go down that route.

Turner's rejection of the recommendation, where WMATA accepted the recommendation, constitutes a bar to recovery. Neither the agency nor this court has any discretion to consider whether attorney's fees is warranted in circumstances other than those expressly provided by § 32-1530.

Our dissenting colleague also believes that this case should be remanded for the CRB to consider whether Ms. Turner's rejection of the informal recommendation and the filing of an application for a formal hearing, in of itself, is a sufficient basis to deny her claim for attorney's fees. *Post* at 20. For the reasons already stated, we disagree that § 32-1530 (b) could be read as requiring the employer to pay under the (non-binding) recommendation, or face attorney's fees, if it is the employee who rejects the recommendation and files an application for a formal hearing. The dissent claims that we are affirming on a rationale that the CRB did not rely on in its order. *Post* at 21. However, we maintain that the CRB implicitly agreed with this proposition largely relying on our decision in *Providence Hospital*.

## III.

Nothing in our opinion should be read to suggest that an employer can merely "utter the words" of acceptance, but not actually pay the award once the recommendation converts to a final order, a situation that did not occur here. Finally, although the Act clearly contemplates that the employee is entitled to recourse where the employer fails to pay or unreasonably delays payment, here, no such relief is warranted because the employer did not fail to pay under a final order or unreasonably delay payment. *See* D.C. Code § 32-1528 (b) (stating that the District will assess penalties on the employer or carrier who delays payment of an award in bad faith).

The CRB did not err in concluding that WMATA's acceptance of OWC's recommendation for compensation of a seven percent permanent partial disability award precludes Ms. Turner's claim for attorney's fees under D.C. Code § 32-1530. We further agree with the CRB that WMATA's informal email to Ms. Turner referencing that it might seek a potential credit does not constitute a "refusal" by WMATA to act in accordance with the recommendation. For these reasons, we

*Affirm.*

MCLEESE, *Associate Judge*, dissenting:  Petitioner Shuron Turner seeks an award of attorney's fees in connection with her worker's compensation claim.  I agree with the court that Ms. Turner is not entitled to a fee award under D.C. Code § 32-1530(a) (2012 Repl.).  *Ante* at 6-7.  The court also holds that Ms. Turner is not entitled to a fee award under D.C. Code § 32-1530(b).  *Ante* at 7-15.  In my view, the court should remand that issue to the Compensation Review Board (CRB) for further consideration.  I therefore respectfully dissent.

Section 32-1530(b) provides in certain circumstances for an award of attorney's fees to a successful claimant in a worker's compensation proceeding.  For the claimant to be eligible for an award, the employer or insurance carrier must "refuse to accept" an informal administrative recommendation as to the amount of compensation to which the claimant is entitled.  D.C. Code § 32-1530(b).  In the present case, a claims examiner recommended that Ms. Turner be compensated for a seven-percent permanent partial disability to the right upper extremity, with a recommended overall award of $10,552.40.  The employer, respondent Washington Metropolitan Area Transit Authority (WMATA), initially submitted a letter indicating that it accepted that recommendation.  Ms. Turner also initially

indicated that she intended to accept the recommendation, and she asked WMATA to hold off on paying Ms. Turner until the claims examiner converted the jointly accepted recommendation into a final order. WMATA subsequently took the position, however, that it was entitled to set off the recommended award against payments WMATA had made to Ms. Turner in connection with an unrelated worker's compensation award that was subsequently vacated. The amount of the claimed set off was $14,303.34. Ms. Turner thereafter rejected the recommendation. Ms. Turner claims, and WMATA does not dispute, that WMATA made no payments pursuant to the recommended award in this case. In subsequent formal administrative proceedings, Ms. Turner established that she was entitled to compensation for a thirteen-percent permanent partial disability and that WMATA was not entitled to a set-off.

Ms. Turner then applied for attorney's fees. An Administrative Law Judge (ALJ) denied the application. The ALJ gave two reasons for its ruling: (1) WMATA submitted a letter accepting the recommended award; and (2) Ms. Turner herself rejected the recommended award and filed a formal application for an administrative hearing. The ALJ did not address Ms. Turner's contention that WMATA made no payments pursuant to the recommended award.

Ms. Turner sought review before the CRB, contesting both of the ALJ's conclusions. The CRB affirmed, relying solely on the conclusion that WMATA's "mere mention of a credit it thought it was owed" did not constitute a rejection of the recommended award. The CRB did not address Ms. Turner's contention that WMATA made no payments pursuant to the recommended award. The CRB also did not address the ALJ's conclusion that Ms. Turner was barred from recovering attorney's fees because she eventually rejected the recommended award and applied for a formal hearing.

The court appropriately disavows the ALJ's apparent view that merely writing a letter stating that an award is accepted suffices to qualify as acceptance of the award for purposes of § 32-1530(b), even if no payment is actually made. *Ante* at 14. In my view, such an approach would be contrary to both law and common sense. As far as law goes, we have previously indicated that it is not enough under § 32-1530(b) for an employer to say that it accepts a recommended award; rather, the employer must "act[] in accordance with that recommendation." *Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1113 (D.C. 2004); *see id.* at 1112 (focusing on whether employer "refuses to pay") (internal quotation marks omitted). As far as common sense goes, § 32-1530(b)'s evident purpose is to authorize a fee award when a claimant is required to use the services

of an attorney in order to get compensation because the employer declines to provide compensation in conformity with a recommended award. *See Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012) ("[A] claimant may recover attorney's fees if the employer . . . refuses to pay additional compensation recommended by the agency after an informal conference, and the claimant uses an attorney to recover a greater amount via an award of compensation.") (citing D.C. Code § 32-1530(b)).  It would not make sense to permit employers to frustrate that purpose by simply purporting to accept a recommended award but then refusing to actually make payments in accordance with the recommended award.

It is undisputed that WMATA never actually made any payments pursuant to the recommended award, and WMATA thus did not act "in accordance with th[e] recommendation." *Providence Hosp.*, 855 A.2d at 1113.  It therefore would seem at first blush that WMATA should be viewed as having rejected the recommended award.  The court instead repeatedly characterizes WMATA as having accepted the recommended award.  *E.g.*, *ante* at 9.  I disagree with the court's analysis in several respects.

First, the court's analysis depends critically on repeated characterizations of WMATA as only having tentatively raised the possibility of a credit. *Ante* at 10 ("WMATA merely advised Ms. Turner, informally, and by email, that it 'may' seek a 'credit'"), 12 (describing WMATA as "simply . . . informally emailing Ms. Turner of the possibility of that it would seek a credit"), 14 (WMATA said "that it might seek a potential credit"). The CRB similarly characterized WMATA's position, referring to WMATA as making a "mere mention of a credit it thought it was owed." These repeated characterizations are indisputably inaccurate. In fact, WMATA stated unequivocally that it "is going to allege a credit." Moreover, WMATA acted in accordance with its clearly stated position, making no payments pursuant to the recommended award. WMATA's actual position and conduct thus squarely contradict the court's statement that "the record reflects" that WMATA "accept[ed] the recommendation in full" and "intended to tender the full amount recommended by the Mayor." *Ante* at 9.

Second, the court suggests that it is really Ms. Turner's fault that WMATA rejected the recommended award, because Ms. Turner also rejected the award. *Ante* at 13. As is discussed *infra* at 21-25, the CRB did not rely on such a theory. In any event, the court's suggestion seems to me to misunderstand the sequence of events. WMATA communicated its refusal to make payments pursuant to the

recommended award first, before Ms. Turner rejected the award. Ms. Turner therefore cannot reasonably be viewed as responsible for WMATA's rejection of the recommended award.

In sum, I see no adequate basis for the CRB's conclusion that WMATA did not reject the recommended award. I therefore would vacate the order of the CRB and remand for the CRB to address the other bases upon which WMATA argues against a fee award. The court, however, goes on to address and decide one of those alternative bases: that Ms. Turner's subsequent decision to reject the recommended award by itself precludes a fee award. *Ante* at 8-15. In my view, affirming on that basis is impermissible under well-settled principles of administrative law. The CRB did not decide whether Ms. Turner's fee claim was barred by Ms. Turner's subsequent rejection of the recommended award, and although the ALJ did seem to rely on that theory, the ALJ provided no explanation or analysis on the point.

The court suggests that the CRB did decide this issue, *ante* at 5, 13-14, but I do not agree. First, the court describes the CRB as having rejected Ms. Turner's claim for attorney's fees "because she rejected the . . . recommendation after WMATA had accepted the recommendation." *Ante* at 5. I see no support for this

description of the CRB's decision. The sole basis for the CRB's decision, found on page four of the CRB's decision, is that WMATA did not reject the recommended award. On page three of its opinion, the CRB does quote WMATA's argument that Ms. Turner rejected the recommended award, but the CRB does not adopt or express approval of that argument. Second, the court states that the CRB "implicitly agreed" with the theory that Mr. Turner was foreclosed from a fee award because she rejected the recommended award. *Ante* at 14. According to the court, the CRB signaled its implicit acceptance of that theory by "largely relying on our decision in *Providence Hospital*." *Id.* This is a puzzling line of reasoning, because *Providence Hospital* involved a very different issue from the issue in the present case. In *Providence Hospital*, the employer never rejected the recommended award. 855 A.2d at 1110. As the court explained, in such cases an express statutory requirement under D.C. § 32-1530(b) is not met. *Id.* at 1110, 1112-13. The court in *Providence Hospital* thus had no occasion to consider what should happen where, as in the present case, an employer first rejects a recommended award, the claimant thereafter rejects the recommended award, and the claimant subsequently establishes an entitlement to compensation greater than the recommended award.

We ordinarily must remand for the agency to determine whether to accept an alternative rationale and to explain the agency's reasoning. *See, e.g.*, *M.C. Dean, Inc. v. District of Columbia Dep't of Emp't Servs.*, 146 A.3d 67, 75 (D.C. 2016) (remanding case to CRB because the ALJ "failed to explain its reasoning") (brackets and internal quotation marks omitted); *Apartment & Office Bldg. Ass'n v. Pub. Serv. Comm'n*, 129 A.3d 925, 930 (D.C. 2016) ("Generally, an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.") (internal quotation marks omitted); *Brown v. District of Columbia Dep't of Emp't Servs.*, 83 A.3d 739, 751-52 (D.C. 2014) ("In accordance with our usual practice, we will not attempt to construe the statutory provisions before the agency charged with administering them has done so; we think it inadvisable for this court to attempt to review the issue on this record without a clearer exposition by the agency of its statutory analysis in light of the facts of this case and the broader considerations presented by the issue.") (internal quotation marks omitted); *Hensley v. District of Columbia Dep't of Emp't Servs.*, 49 A.3d 1195, 1205 (D.C. 2012) ("acknowledg[ing] the CRB's expertise and responsibility for administering the Workers' Compensation Act, [court] conclude[s] that the appropriate course is to remand the case to enable the CRB to consider [a statutory interpretation issue] in

the first instance") (brackets, ellipses, citation, and internal quotation marks omitted).

There are exceptions to the general rule against affirming agency action on grounds that the agency did not rely upon and adequately explain. *E.g.*, *Apartment & Office Bldg. Ass'n*, 129 A.3d at 930 (such affirmance is permissible where remand would be futile because (a) it is clear agency would reach same result or (b) agency could permissibly reach only one conclusion). The court does not invoke any such exception in this case, and none is apparent to me. To the contrary, I see no permissible basis for this court to decide for itself, without input from the CRB, whether Ms. Turner's subsequent rejection of the recommended award precludes a fee award. To the contrary, it seems to me unclear whether Ms. Turner's rejection of the recommended award should by itself preclude a fee award, even if WMATA had already refused to make payments pursuant to the recommended award. Section 32-1530(b) by its terms does not tie the availability of a fee award to the claimant's decision to accept or contest the recommended award. The court appears to conclude that § 32-1530(b) implicitly precludes a fee award whenever the claimant contests the recommended award, even if the employer had previously refused to make payments pursuant to the recommended award and (as in this case) the claimant later establishes an entitlement to benefits

in an amount greater than the recommended award. *Ante* at 8-15. In reaching that conclusion, the court decides an issue of statutory construction that the court should not decide without getting the benefit of the CRB's expertise.

Although I would leave this issue to be decided by the CRB in the first instance, I note briefly that I have a number of reservations about the points the court makes in support of its conclusion that a claimant's decision to contest a recommended award by itself precludes a fee award, even if the employer has previously rejected the recommended award. *Ante* at 9-14.

(1) I agree that a recommended award does not become binding unless accepted by the parties, and that once a recommended award has been rejected the informal process ends. *Ante* at 10-11. It does not logically follow from either of these propositions, however, that a claimant's decision to contest a recommended award precludes a fee award if the employer refuses to make payments pursuant to a recommended award and the claimant later establishes a right to compensation in an amount greater than was recommended. For example, when an employer completely rejects a recommended award and refuses to make any payment, the award does not become binding and the informal process ends. Nevertheless, the employer will be liable to pay attorney's fees if the claimant later establishes an

entitlement to an award.  Thus, the obligation to pay attorney's fees can arise even if the recommended award never became binding and the informal process ended.

(2)  I do not understand the court's apparent concern that employers might be effectively forced to make unwarranted payments pursuant to a recommended award, out of a fear that they would be held liable for a fee award because they rejected the recommended award.  *Ante* at 9-10 n.3.  Section 32-1530(b) authorizes a fee award only if the amount awarded after a hearing "is greater than the amount paid or tendered" by the employer pursuant to the recommended award.  Thus, an employer who believes that a recommended award is excessive or unwarranted can choose to make lesser payments or none at all, and if the employer's position is later upheld after a formal hearing, the employer will not be responsible for attorney's fees under § 32-1530(b).

(3)  Permitting recovery of fees in a case such as the present one also would not be "incongruously treating the employer as bound by a settlement that the employee rejected."  *Ante* at 11.  Rather, it would create an incentive for employers, during the period of further litigation, to pay at least the recommended amount, in order to avoid the possibility of having to pay attorney's fees if the claimant later were able to establish an entitlement to an award that was even

greater than the recommended amount. Such an approach may or may not on balance be good policy and may or may not be the best reading of the applicable provisions. Those are issues that I would leave to the CRB in the first instance. But such an approach is not reasonably described as treating the recommended award as in some sense binding on the employer but not the claimant.

(4) *National Geographic Society v. District of Columbia Department of Employment Services*, 721 A.2d 618 (D.C. 1998), is readily distinguishable from this case. In *National Geographic*, a claimant sought a fee award under § 32-1530 (b) (then codified at D.C. Code § 36-330(b)) even though the claimant had never sought an informal recommendation and the employer therefore had never refused to make payments pursuant to such a recommendation. 721 A.2d at 621. The court correctly concluded that a fee award was unavailable in those circumstances, under the plain language of what is now § 32-1530(b). *Id.* at 621-22. That holding sheds little light on the different question presented in this case, in which a recommended award was issued, the employer refused to make payments pursuant to that recommendation, and the claimant subsequently established an entitlement to an award greater than what was recommended.

For the foregoing reasons, I respectfully dissent.